```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-25-09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -x
                          :

FAMILIES FOR FREEDOM et al.,
                          :

          Plaintiffs,

                          :        **MEMORANDUM DECISION**

     - against -
                          :        08 Civ. 4056 (DC)

JANET NAPOLITANO, Secretary of
Homeland Security,
                          :

          Defendant.   :

- - - - - - - - - - - - - - - - - - - -x

**APPEARANCES:**        JEROME N. FRANK LEGAL SERVICES ORGANIZATION
                  By:  Michael Wishnie, Esq.
                      Anand Balakrishnan
                      Jeffrey Kahn
                      Lindsay Nash
                        Law Student Interns
                Attorneys for Plaintiffs
                Yale Law School
                P.O. Box 209090
                New Haven, Connecticut  06520-9090

                LEV L. DASSIN, Esq.
                Acting United States Attorney for the
                Southern District of New York
                Attorney for Defendant Janet Napolitano
                  By:  David Bober, Esq.
                      Assistant United States Attorney
                One St. Andrew's Plaza
                New York, New York  10007

**CHIN, District Judge**

        In this case, plaintiffs -- two immigrant advocacy

organizations and two former immigration detainees -- contend

that substandard and abusive conditions exist in facilities that

---

[1]    This lawsuit was commenced against Michael Chertoff,
the former Secretary of Homeland Security.  Pursuant to Rule
25(d) of the Federal Rules of Civil Procedure, current Secretary
Janet Napolitano has been substituted for Chertoff as the
defendant in this action.

house detained immigrants.  Consequently, on January 25, 2007,
plaintiffs petitioned the Department of Homeland Security ("DHS")
pursuant to the Administrative Procedure Act, 5 U.S.C. § 551 et
seq. (the "APA"), to promulgate regulations to govern the
conditions in immigration detention facilities.  When DHS still
had not responded more than a year later, plaintiffs sued in this
Court under the APA, seeking an order requiring DHS to decide
their petition, or, in the alternative, declaring that DHS's
failure to respond constituted a constructive denial of their
petition in violation of the APA.

        DHS still has not, as of this date, granted or denied
plaintiffs' petition.

        DHS moves to dismiss the complaint pursuant to Federal
Rules of Civil Procedure 12(b)(1) and (6) for lack of subject
matter jurisdiction and standing, and for failure to state a
claim upon which relief may be granted.  For the reasons set
forth below, DHS's motion is denied.  Moreover, I conclude that
DHS's delay of almost two-and-one-half years is unreasonable as a
matter of law, and order DHS to decide plaintiffs' petition
within thirty days.

**BACKGROUND**

**A.  Facts**

        The underlying facts alleged in the complaint are
assumed to be true for purposes of this motion.  The procedural
facts are not in dispute.

-2-

### 1.  **Parties**

Plaintiff Families for Freedom is a non-profit organization based in New York that serves immigrants and their families.  (Compl. ¶ 14).  Plaintiff National Immigration Project of the National Lawyer's Guild is a non-profit organization based in Boston that defends immigrants facing removal and incarceration.  (Id. ¶ 12).  Plaintiff Rafiu Abimbola is a Nigerian national who was held in DHS detention facilities for more than six years.  (Id. ¶ 10).  Plaintiff Camal Marchabeyoglu is a lawful permanent resident who was detained by DHS several times between 1998 and 2004.  (Id. ¶ 11).

DHS is an agency of the United States responsible for, inter alia, federal immigration policy.  (Id. ¶ 17).  Immigration and Customs Enforcement ("ICE") is a division within DHS responsible for, inter alia, detaining non-citizens accused of immigration violations.  (Id. ¶ 18).

### 2.  **DHS's Detention Standards**

ICE operates numerous detention facilities, either itself or through private contractors.  It also contracts with state, county, and local jails to house detained immigrants.  (Id. ¶¶ 19-20).  The detention of immigrants in facilities controlled by different entities "has led to inconsistent conditions of confinement, substandard and abusive detention conditions, and widespread detainee mistreatment."  (Id. ¶ 33).  Immigrant detainees have been subjected to verbal and physical abuse and denied adequate medical care.  (Id. ¶ 34).

-3-

The Immigration Naturalization Service ("INS"), the predecessor to ICE, acknowledged the problems with the immigrant detention system, and in 1998 adopted detention standards. (Id. ¶ 35). These standards were inadequate, however, because they did not apply to detainees in state and local jails -- where most of the problems occur -- and so, in 2000, INS adopted new standards. (Id. ¶¶ 36, 39). The new standards applied to state and local jails holding immigration detainees, but only those that held detainees for more than 72 hours. (Id. ¶ 40).

In 2003, ICE issued a "Detention and Removal Strategic Plan for 2003-2012" to address continuing problems with detention facilities. (Id. ¶ 42). Plaintiffs allege that the 2003 plan is inadequate, however, because it only provides guidelines -- as opposed to mandatory standards -- for detention facilities, and did not establish any enforcement mechanism. (Id. ¶¶ 44-46). Moreover, ICE does not even train its employees based on the guidelines. (Id. ¶ 48). The 2003 plan is the most recent set of guidelines immigration authorities have issued regarding standards in detention facilities.

Since 2003, problems in detention facilities have been persistent and widespread. In a 2006 report, the DHS Office of Inspector General issued a report detailing significant problems in ICE detention facilities. (Id. ¶¶ 53-57). The report found, for example, that at a number of facilities, officials did not respond to non-emergency medical requests by detainees within the time required by DHS guidelines. (Id. ¶ 55). Problems with

-4-

detainee medical care have also been chronicled by the news
media, which have reported a number of instances in which
immigration detainees have been seriously injured or died while
in the custody of immigration authorities.  <u>See, e.g.</u>, Dana
Priest & Amy Goldstein, <u>Suicide Points to Gaps in Treatment:</u>
<u>Errors in Psychiatric Diagnoses and Drugs Plague Strained</u>
<u>Immigration System</u>, Wash. Post, May 13, 2008, at A1; Nina
Bernstein, <u>Ill and In Pain, Detainee Dies in U.S. Hands</u>, N.Y.
Times, Aug. 13, 2008, at A1; Nina Bernstein, <u>Another Jail Death,</u>
<u>and Mounting Questions</u>, N.Y. Times, Jan. 28, 2009, at A14.

### 3.  **Plaintiffs' Petition for Rulemaking**

In light of these persistent problems in detention
facilities, on January 25, 2007, plaintiffs petitioned DHS,
pursuant to 5 U.S.C. § 553(e),[2] to promulgate binding regulations
governing detention conditions and standards for detained
immigrants.  (Compl. ¶ 69).  On January 31, 2007, the American
Bar Association (the "ABA") sent DHS a letter "in strong support"
of plaintiffs' petition.  (Bober Decl. Ex. B).

On March 19, 2007, DHS responded to the ABA's letter,
stating that it would "consider" the petition, and went on to
discuss in general terms DHS's efforts to ensure adequate
conditions in detention facilities.  (Bober Decl. Ex. C).  DHS
did not, however, respond directly to plaintiffs.

---

[2]    Section 553(e) provides that "[e]ach agency shall give
an interested person the right to petition for the issuance,
amendment, or repeal of a rule."

## B.  Procedural History

Plaintiffs filed the complaint in this action on April 30, 2008, invoking the Court's jurisdiction under 28 U.S.C. § 1331, and asserting two claims.  First, they claim that DHS's delay in responding to their petition was unreasonable and asked the Court, pursuant to Section 706(1) of the APA, to compel DHS to respond.  (Compl. ¶¶ 82-87).  Second, they claim that DHS's failure to respond constituted a constructive denial that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  (Id. ¶¶ 88-92).

On July 15, 2008, two-and-one-half months after plaintiffs filed this lawsuit, and almost eighteen months after plaintiffs submitted their petition, DHS finally communicated with plaintiffs.  (Bober Decl. Ex. D).  DHS wrote a letter to plaintiffs stating that "DHS and ICE continue to study the possibility of commencing a rulemaking action" and discussing, in general terms, DHS's efforts to improve conditions in detention facilities.  (Id.).  While the letter is a "response" within the literal meaning of the word, the letter does not grant or deny plaintiffs' petition.

DHS moved to dismiss on October 15, 2008.  I held oral argument on December 18, 2008, and reserved decision, as I urged the parties to try to resolve the matter.

On December 30, 2008, DHS informed the Court that it would issue a final decision on plaintiffs' petition by January 16, 2009, and requested that the Court refrain from ruling on

-6-

DHS's motion in the interim.  On January 16, 2009, DHS requested
an additional five days to issue its decision.  On January 21,
2009, DHS informed the Court that, while its previous letters
were accurate representations of DHS's position "at the time," it
could neither meet the January 21, 2009 deadline nor "commit to a
specific date by which it will render a final decision on
plaintiffs' petition."  (1/21/09 Ltr. at 1).

### DISCUSSION

DHS moves to dismiss on three grounds.  First, it
argues that plaintiffs' complaint amounts to a "broad
programmatic attack" of agency action that is precluded from
judicial review under the APA.  Second, it argues that there is
no "final action" for the Court to review because DHS has not yet
responded to plaintiffs' petition.  Finally, DHS argues that
plaintiffs lack standing to pursue their claims.

DHS's arguments are all directed at plaintiffs' second
cause of action.  Plaintiffs, in opposition to DHS's motion to
dismiss, argue principally that the relief they seek is on their
first cause of action -- that DHS either grant or deny their
petition.  They argue that, under 5 U.S.C. § 555(b), an agency
presented with a petition for rulemaking must, at a minimum,
respond to that petition, and that the petitioning party has
standing to compel a response unreasonably withheld.

For the reasons that follow, DHS's motion to dismiss is
denied.  Moreover, I conclude that plaintiffs are entitled to
judgment in their favor as to the first count of their complaint.

-7-

Specifically, I conclude that DHS is required to grant or deny
plaintiffs' petition, and that its delay in doing so is
unreasonable as a matter of law.

Because I find for plaintiffs on the first count of
their complaint, I dismiss as moot, and without prejudice, the
second count.

## A.    <u>DHS's Motion to Dismiss</u>

Courts differ as to whether a motion to dismiss an
action brought under 5 U.S.C. § 706(1) is based on lack of
standing, subject matter jurisdiction, or failure to state a
claim.  <u>See</u> <u>Norton v. S. Utah Wilderness Alliance</u>, 542 U.S. 55,
73 (2004) (upholding district court's dismissal for lack of
subject matter jurisdiction); <u>Ctr. for Biological Diversity v.</u>
<u>Veneman</u>, 394 F.3d 1108, 1113 (9th Cir. 2005) (affirming dismissal
for lack of standing); <u>Friends of the Earth v. U.S. Dep't of</u>
<u>Interior</u>, 478 F. Supp. 2d 11, 23 (D.D.C. 2007) ("A dismissal for
failure to satisfy the APA's requirements for judicial review of
agency action is thus a dismissal for failure to state a claim
under Rule 12(b)(6), not a dismissal for want of subject matter
jurisdiction under Rule 12(b)(1) . . . .").

Here, DHS cites all three grounds as the basis of its
motion to dismiss.  In essence, however, DHS is moving to dismiss
for failure to state a claim upon which relief can be granted.
At oral argument, DHS conceded -- correctly -- that plaintiffs,
as the parties who submitted a petition for rulemaking to DHS,
have standing as to their first cause of action.  (<u>See</u> 12/18/08

-8-

Tr. at 22).  As to subject matter jurisdiction, it is conferred
by 28 U.S.C. § 1331, as this case arises under a federal statute
-- namely, the APA.  See 28 U.S.C. § 1331 ("The district courts
shall have original jurisdiction of all civil actions arising
under the Constitution, laws, or treaties of the United
States.").  Moreover, the Court also has subject matter
jurisdiction over this case because the United States is a
defendant.  See 28 U.S.C. § 1346(a)(2) ("The district courts
shall have original jurisdiction . . . of . . . [a]ny other civil
action or claim against the United States, not exceeding $10,000
in amount, founded either upon the Constitution, or any Act of
Congress.").  Accordingly, the Court treats DHS's motion as one
to dismiss under 12(b)(6).

          I now turn to the two claims in plaintiffs' complaint.

## B.  **Plaintiffs' First Claim**

          Not only do I conclude that plaintiffs have stated a
claim as to their first cause of action, I conclude that they are
entitled to judgment in their favor as a matter of law.[3]

### 1.  **Is DHS Required to Respond to a Petition for Rulemaking?**

          The APA expressly grants any "interested person" the
right to petition a federal agency "for the issuance, amendment,
or repeal of a rule."  See 5 U.S.C. § 553(e).  A federal agency

---

          [3]    A district court has the inherent authority to
undertake an independent review of the record before it and enter
judgment in favor of either party.  See First Fin. Ins. Co. v.
Allstate Interior Demolition Corp., 193 F.3d 109, 115 (2d Cir.
1999) (holding, in context of summary judgment, that court may
enter judgment for either moving or non-moving party).

presented with such a petition is required to decide the
petition, "within a reasonable time." <u>See</u> 5 U.S.C. § 555(b)
("With due regard for the convenience and necessity of the
parties or their representatives and within a reasonable time,
each agency <u>shall</u> proceed to conclude a matter presented to it.")
(emphasis added); <u>In re Am. Rivers & Idaho Rivers United</u>, 372
F.3d 413, 418-19 (D.C. Cir. 2004) (holding that, under APA,
federal agency must respond to rulemaking petition); Richard J.
Pierce, Jr., Administrative Law Treatise § 6.10 (4th ed. 2002)
("At a minimum, the right to petition for rulemaking entitles a
petitioning party to a response to the merits of the petition.").
If an agency fails to respond to a petition, courts have the
authority to "compel agency action unlawfully withheld or
unreasonably delayed." 5 U.S.C. § 706(1).

        Thus, it is clear that DHS is required to at least
definitively respond to plaintiffs' petition -- that is, to
either deny or grant the petition. Indeed, DHS conceded this
point at oral argument. (<u>See</u> 12/18/08 Tr. at 6). It is also
undisputed that, as of this writing, DHS has neither denied nor
granted plaintiffs' petition. (DHS Mem. at 1 ("DHS has neither
granted nor denied the petition."); 12/18/08 Tr. at 6; 1/21/09
Ltr. at 1 (referencing fact that DHS has not issued a final
decision on petition)). The only question remaining, then, is
whether DHS's delay in answering the petition is unreasonable as
a matter of law.

## 2.  **Is DHS's Delay Unreasonable Under the APA?**

In _Telecommunications Research and Action Center v._
_FCC_, 750 F.2d 70 (D.C. Cir. 1984) ("_TRAC_"), the District of
Columbia Circuit established a six-factor test for courts to
consider in determining whether a federal agency's failure to
respond to a petition is unreasonable under the APA.  The _TRAC_
factors are as follows:

> (1) the time agencies take to make decisions
> must be governed by a rule of reason; (2)
> where Congress has provided a timetable or
> other indication of the speed with which it
> expects the agency to proceed in the enabling
> statute, that statutory scheme may supply
> content for this rule of reason; (3) delays
> that might be reasonable in the sphere of
> economic regulation are less tolerable when
> human health and welfare are at stake; (4)
> the court should consider the effect of
> expediting delayed action on agency
> activities of a higher or competing priority;
> (5) the court should also take into account
> the nature and extent of the interests
> prejudiced by delay; and (6) the court need
> not find any impropriety lurking behind
> agency lassitude in order to hold that agency
> action is unreasonably delayed.

_Id._ at 80.  The D.C. Circuit's decision in _TRAC_ has been widely
followed by federal courts.  _See, e.g._, _Brower v. Evans_, 257 F.3d
1058, 1068 (9th Cir. 2001) (following _TRAC_); _Wellesley v. FERC_,
829 F.2d 275, 277 (1st Cir. 1987) (same); _Assadzadeh v. Mueller_,
No. 07 Civ. 2676, 2007 U.S. Dist. LEXIS 80915, at *15 (E.D. Pa.
Oct. 30, 2007) (following _TRAC_ and referring to it as "seminal"
test for unreasonable delay); _Natural Res. Def. Council v. Fox_,
93 F. Supp. 2d 531, 543 (S.D.N.Y. 2000) (following _TRAC_).

-11-

Applying the TRAC factors, I conclude that DHS's nearly
two-and-one-half year delay in deciding plaintiffs' petition is
unreasonable as a matter of law.

As to the first factor -- which the D.C. Circuit has
characterized as the "most important," In re Core Communs., Inc.,
531 F.3d 849, 855 (D.C. Cir. 2008) -- applying a rule of reason
compels the conclusion that DHS's delay is unreasonable.  The
D.C. Circuit has held that, while "[t]here is no per se rule as
to how long is too long to wait for agency action, [] a
reasonable time for agency action is typically counted in weeks
or months, not years." In re Am. Rivers & Idaho Rivers United,
372 F.3d at 419 (internal citation and quotations omitted).  It
is unreasonable for DHS to take years to decide whether it
intends to commence rulemaking regarding standards for detention
facilities, given the gravity of the problems plaintiffs
describe.  Its delay in even responding to plaintiffs "saps the
public's confidence in an agency's ability to discharge its
responsibilities," and therefore runs afoul of the APA.  Potomac
Elec. Power Co. v. Interstate Commerce Comm'n, 702 F.2d 1026,
1034 (D.C. Cir. 1983).

The second factor is neutral, as there is no indication
that Congress has established a timetable within which DHS must
render a decision.

As to the third factor, concerns of human health and
welfare are undeniably at stake.  Indeed, plaintiffs allege that
detainees in DHS custody are dying as a result of the substandard

-12-

conditions under which they are held.  Plaintiffs' claim clearly implicates concerns of human health and welfare, making DHS's delay in responding to the petition that much more egregious. See Fox, 93 F. Supp. 2d at 544 (court should only compel agency action under 706(1) where delay is "'egregious'") (quoting TRAC, 750 F.2d at 79).

As to the fourth factor, expediting DHS's decision in this respect surely would not interfere with any "agency activities of a higher or competing priority," TRAC, 750 F.2d at 80, for the concerns raised by plaintiffs are of the utmost importance.

As to the fifth factor, as discussed in the context of factor three, at issue here is the health and welfare of detainees in DHS custody, and thus the risk of prejudice due to further delay is severe.

As to the sixth factor, there is no suggestion that there has been any impropriety, and thus this factor is neutral.

DHS argues that its delay in deciding plaintiffs' petition is not unreasonable, and it cites cases in which courts have held that delays of several years are reasonable.  DHS acknowledges, however, that there is no per se rule as to whether a given delay is reasonable, and that courts must determine the reasonableness of delay based on the totality of the circumstances.  (DHS Reply at 6 n.2).

Here, considering the <u>TRAC</u> factors and the totality of the circumstances of this case, I hold, as a matter of law, that DHS's almost two-and-one-half year delay is unreasonable.

### 3.  Remedy

"When an administrative agency simply refuses to act upon an application, the proper remedy -- if any -- is an order compelling agency action, not plenary review of the application by a district court."  <u>McHugh v. Rubin</u>, 220 F.3d 53, 61 (2d Cir. 2000).  Accordingly, I hereby order DHS to grant or deny plaintiffs' complaint within thirty days of entry of judgment.

### C.  Plaintiffs' Second Claim

Because I hold that DHS has not yet responded to plaintiffs' petition within the meaning of the APA, plaintiffs' claim that DHS's response constitutes a constructive denial is dismissed, without prejudice, as moot.

### CONCLUSION

For the foregoing reasons, DHS's motion to dismiss is denied.  DHS is hereby ordered to respond to plaintiffs' petition within thirty days.  Plaintiffs' second claim is dismissed, without prejudice, as moot.  The Clerk of Court is directed to enter judgment accordingly and to close the case.

SO ORDERED.

Dated:     New York, New York
           June 25, 2009

_____
DENNY CHIN
United States District Judge

-14-